OPINION OF THE COURT
Mary Ann Killeen, J.
This proceeding was commenced in Erie County Family Court, pursuant to article 3-A of the Domestic Relations Law (Uniform Support of Dependents Law [USDL]), upon a petition instituted in Fairfax County, in the Commonwealth of Virginia. The relief sought is support for the petitioner and the two infant children of the parties, Jose Luis Patch, date of birth, January 11, 1966, and Maria Alexandria Patch, date of birth, April 11, 1967.
The facts, as alleged by the respondent, together with those which are apparent from a previous petition filed in this court, appear not to be in dispute. The parties were divorced in the State of Wisconsin in 1970, with that decree granting custody of the two children to the petitioner, together with an order of support. Thereafter, unfortunately, the children were shuffled between the parties a number of times. However, by an agreement in April, 1977, later incorporated into an amended order, in the State of Wisconsin, the respondent obtained custody of the two children. Apparently, they remained with the respondent until the summer of 1979 when the petitioner retained the children after the end of her summer visitation. The respondent has been seeking return of the children *249 since then. A previous order of the Erie County Family Court, entered June, 1980 by Judge Honan, denied respondent an order of custody in New York. In declining to grant such order, Judge Honan held that the Wisconsin order remained valid and enforceable under the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A) and that an additional order from New York was unnecessary. This court is bound by the law of the case.
The issue to be decided by this court is a narrow one. It is whether this court is bound under the Uniform Support of Dependents Law to order respondent to support children wrongfully retained by the petitioner, and for whom respondent has a valid order of custody under the Wisconsin court order. Clearly, this court must decline to order such support.
Counsel for both parties agree that the law of New York permits cancellation of arrears of both alimony and child support for unreasonable interference with visitation rights, citing Borax v Borax (4 NY2d 113), Callender v Callender (37 AD2d 360) and Cohen v Cohen (56 AD2d 784).
However, counsel for petitioner argues that notwithstanding petitioner’s admittedly unlawful retention of the children, the respondent is nonetheless responsible for future child support, though the court may impose conditions in so ordering.
Certainly there may be instances where the court of the responding State might fashion such an order, particularly where the petitioner was a public agency (Domestic Relations Law, § 36). However, the court must be mindful, as well, of the public policy of this State, both in enforcing foreign decrees and in entertaining USDL actions such as this.
Custody is not at issue in this proceeding, as this court is bound by the previous determination that the Wisconsin decree is still valid and enforceable. However, in analyzing New York’s public policy concerns, the views of this State on “child snatching” must be enforced.
While full faith and credit is not always afforded custody decrees of other States, comity has always been recognized *250 as New York’s policy absent “exceptional circumstances”. Speaking on the issue of self-help in defiance of another State’s custody order, Judge Breitel in Matter of Lang v Lang (9 AD2d 401, 408, affd 7 NY2d 1029) illustrated the court’s concern for such action: “Adherence to the principle of comity provides the key to rational disposition for the welfare of the children * * * in many, if not most, custody cases involving self-help. And for this reason: comity makes futile and thus discourages the resort to self-help which in the custody dispute is an irresponsible and barbaric remedy. Not only does self-help make the eventual placement of the children an arbitrary consequence but it breeds reprisal in kind”. Again in Matter of Bennett v Jeffreys (40 NY2d 543, 550) then Chief Judge Breitel reiterated the policy, particularly applicable in the present case: “The resolution of [custody] cases must not provide incentives for those likely to take the law into their own hands. Thus, those who obtain custody of children unlawfully, particularly by kidnapping, violence, or flight from the jurisdiction of the courts, must be deterred. Society may not reward, except at its peril, the lawless because the passage of time has made correction inexpedient.” (See, also, Matter of Nehra v Uhlar, 43 NY2d 242; Bergen v Bergen, 439 F2d 1008.)
The above discussion illustrates the distaste for self-help in custody cases which is the policy of New York. As indicated by respondent, and not disputed by petitioner’s memorandum of law, this is a case of first impression, with no New York law addressing the issue of whether a parent with a custody order may be forced to pay support.
Generally, the issue presented is when the parent paying support is denied visitation. (Borax v Borax, supra; Callender v Callender, supra; Cohen v Cohen, supra; see, also, Matter of Doe v Doe, 86 Misc 2d 194; Goodwin v Fayerman, 88 Misc 2d 690; Matter of Sandra B. v Charles B., 85 Misc 2d 633; Hudson v Hudson, 97 Misc 2d 558.) Often, the courts will direct such support only when the petitioner satisfactorily complies with the terms of the outstanding court order (usually, visitation). (Matter of Wheeler v Wheeler, 74 Misc 2d 1021; Matter of Shinouda v Shinouda, 96 Misc 2d 290.)
*251 The Appellate Division, Fourth Department, has reinforced this view relative to the interdependence of child support payment and denial of visitation in Sipos v Sipos (73 AD2d 1055, 1056) where the respondent was relieved of his support obligation: “until the child is returned to New York State where appellant’s [Respondent’s] rights of visitation may be exercised, or until a remedy is fashioned that will adequately protect his visitation rights”. (See, also, Weiss v Weiss, 52 NY2d 170.)
Respondent’s reference to Richards v Gibson (90 Cal App 3d 877) is illuminating. The facts were slightly different, as that case involved the application of a particular statute. However, the policy enunciation on California law, involving interstate enforcement of the support obligation of a parent, was similar to that reached by the New York courts, when a valid decree is disobeyed.
In sum, to grant the petition of one in defiance of a valid enforceable court order, here from Wisconsin, and recognized as such by the law of this case, would bestow the benefits of the system of interstate law and comity, on one who simultaneously seeks to frustrate that system by her actions. Until the petitioner is granted an order of custody recognized in the New York courts, and not contrary to New York’s public policy, no order of support under article 3-A of the Domestic Relations Law will issue from this court.